```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
ALEX DERBAREMDIKER,

                Plaintiff,
```

**MEMORANDUM AND ORDER**

```
    -against-
```
                                    12-CV-01058 (KAM)

```
APPLEBEE'S INTERNATIONAL, INC.,

                Defendant.
------------------------------X
```

**MATSUMOTO, United States District Judge:**

On March 1, 2012, Alex Derbaremdiker ("plaintiff") commenced this putative class action against defendant Applebee's International, Inc. ("Applebee's" or "defendant"), asserting deceptive practices and unjust enrichment claims under New York law in connection with a sweepstakes that plaintiff participated in via defendant's website.  (*See* ECF No. 1, Complaint ("Compl.").)  Presently before the court is defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Oral argument was held on the motion on September 21, 2012.  Having reviewed the parties' submissions, the record before the court, and the relevant case law, for the reasons set forth below, defendant's motion to dismiss is granted in its entirety.

## BACKGROUND

The following facts, taken from plaintiff's complaint, are assumed to be true for the purpose of deciding the instant

motion.  Additionally, as discussed further below, the court has considered the exhibits accompanying the parties' submissions[1] because they are either quoted in, incorporated in by reference in, or integral to, the complaint, and both parties agreed at oral argument that consideration of those exhibits is proper on this motion to dismiss.  (*See* Def. Mem. at 9-10; Pl. Opp'n at 8.)

On November 3, 2011, plaintiff dined at one of defendant's restaurants located at 2201 Nostrand Avenue in Brooklyn, New York, and received a receipt for his meal. (Compl. ¶ 14.)  Plaintiff's receipt contained the following text, in relevant part:

---

[1] (*See* ECF No. 13-1, Defendant's Memorandum of Law in Support of Motion to Dismiss Complaint with Prejudice ("Def. Mem."); ECF No. 18, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Pl. Opp'n"); ECF No. 14, Defendant's Reply in Support of Motion to Dismiss Complaint with Prejudice ("Def. Reply").)

```
****************************************
        WE LOVE TO HEAR FROM OUR GUESTS!

          We invite you to complete our
             GUEST EXPERIENCE SURVEY

              YOU COULD WIN $1,000
                A WINNER EVERY DAY!
         Other great prizes also available daily

                  Go online to:
              www.MyApplebeesVisit.com

          No purchase necessary. Must be 18
           or older. Void where prohibited.
             See Website for rules/details.

****************************************
* Serial Number: 117635381              *
*                                       *
* Validation Code:                      *
****************************************
          Expiration Date: February 3, 2012

****************************************
```

(*Id.* ¶¶ 10-13; ECF No. 16-1, Receipt; *see* ECF No. 16,
Declaration of Plaintiff ¶ 2.)[2]  Upon visiting
www.MyApplebeesVisit.com (the "Website"), a customer could
access the "Guest Experience Survey" (the "Survey") by entering
information from his or her receipt, including a serial number.
(ECF No. 13-3, Screenshot of Website (the "Screenshot"); ECF No.
13-2, Declaration of Mark Williamson ("Williamson Decl.") ¶ 3.)
Plaintiff thereafter visited the Website, entered the
information from his receipt, completed the Survey, and was

---

[2] In the event the text of the receipt does not appear in
electronic publications of this decision, the receipt states in relevant part
as follows:  (1) "WE LOVE TO HEAR FROM OUR GUESTS!"; (2) "We invite you to
complete our GUEST EXPERIENCE SURVEY"; (3) "YOU COULD WIN $1,000"; (4) "A
WINNER EVERY DAY!"; (5) "Other great prizes also available daily"; (6) "Go
online to: www.MyApplebeesVisit.com"; and (7) "No purchase necessary.  Must
be 18 or older.  Void where prohibited.  See Website for rules/details."  The
receipt also contained a serial number and expiration date.

entered into a daily drawing (the "Sweepstakes").  (Compl.
¶ 14.)

        When plaintiff visited the Website to complete the
Survey, the Website stated the following information regarding
the Sweepstakes:



(Screenshot.)[3]  The asterisk next to "$1,000" was placed next to
the following text at the bottom center of the Website:



(*Id.*)[4]  If a user clicked on the underlined hyperlink, "**<u>CLICK
HERE FOR OFFICIAL RULES</u>**" (Screenshot), the user would be
directed to another website with the heading "OFFICIAL RULES"
(the "Official Rules").  (ECF No. 13-4, Official Rules;
Williamson Decl. ¶ 4.)

---

        [3] In the event the text of the Screenshot does not does not appear
in electronic publications of this decision, the Screenshot states in
relevant part as follows:  "To thank you for your thoughts, you'll have the
opportunity to enter our daily drawing for $1,000*  Plus, you could instantly
win an iPod®[] at the end of this survey."

        [4] In the event the text of the Screenshot does not does not appear
in electronic publications of this decision, the Screenshot states in
relevant part as follows:  (1) "*<u>**CLICK HERE FOR OFFICAL RULES**</u>"; (2) "NO
PURCHASE NECESSARY. *MUST BE OF LEGAL AGE TO PARTICIPATE. Void where
prohibited."; and (3) "Cash prize value of $1,000 per day.  Apple iPod® prize
value of $200 per day." (emphasis in original).

The Officials Rules stated:  "You have been invited by Applebee's (the 'Client') to participate in the following contest(s), with a chance to win the following eligible prize(s)[.]"  (Official Rules.)  Under the heading "Contest Name and Sponsor," the Official Rules stated: "Empathica Inc. Customer Satisfaction Survey Sweepstakes, sponsored by Empathica, Inc."  (*Id.*)  Under the heading "Eligible Prize(s)," the Official Rules stated the following:

> **Eligible Prize(s)**
> · One (1) prize per day of either USD$1,000, CAD$1,000, £1,000, or 1,000 Euros ("Daily Prize").
>
> · Web (and mail-in) entries only:  One (1) prize per day of a 4GB iPod Nano ("Instant Prize").  The sponsor reserves the right to substitute this prize for a USD $200 gift certificate redeemable for this prize through Apple.com or at any participating Apple store location.

(*Id.*)[5]  Finally, the Official Rules stated that the Sweepstakes may be entered via the Website and contained the following reservation of rights and disclaimer:  "The Sponsor [Empathica Inc.] reserves the right to receive entries into the contest

---

[5] In the event the text of the Official Rules does not appear in electronic publications of this decision, the Official Rules state in relevant part:

**Eligible Prize(s)**

- One (1) prize per day of either USD$1,000, CAD$1,000, £1,000, or 1,000 Euros ("Daily Prize").

- Web (and mail-in) entries only:  One (1) prize per day of a 4GB iPod Nano ("Instant Prize").  The sponsor reserves the right to substitute this prize for a USD $200 gift certificate redeemable for this prize through Apple.com or at any participating Apple store location.

through these and any other methods, as may be determined from
time to time, by the Sponsor at its sole discretion.  Sponsor
will pool entries received from Client's [defendant's] surveys
with entries received from other clients of Sponsor."  (*Id.*)

The website containing the Official Rules also
provided a hyperlink to the "complete Empathica Inc. Customer
Satisfaction Survey Sweepstakes Rules" (the "Complete
Sweepstakes Rules").  (*Id.*; *see* Williamson Decl. ¶ 5.)  The
Complete Sweepstakes Rules disclosed the following information:
(1) a "Daily Prize" of $1,000 and an "Instant Prize" of an iPod
Nano is "available to be won" each day of the Sweepstakes (ECF
No. 13-5, Complete Sweepstakes Rules at 1); (2) "There will be a
series of distinct and separate Sweepstakes conducted each and
every day during the month of November 2011, with each
Sweepstakes lasting one (1) day" during that month (*id.* at 2);
(3) "Each survey completed on the Website . . . shall receive
(10) entries to the draw" (*id.* at 3); (4) "Unselected entries
will not be eligible for subsequent draws" (*id.*); and (5) "The
chances of winning the prize depend on the number of eligible
entries received and the number of the Sponsor's client
companies that are participating in the Sweepstakes" (*id.* at 4).

Plaintiff makes two primary allegations underlying his
claims:  (1) "[i]n describing the Applebee's Sweepstakes on its
[receipts], Applebee's implies that participants in the

6

Applebee's Sweepstakes compete for prizes only against other
Applebee's Sweepstakes participants when, on the contrary, they
compete against participants in the sweepstakes of approximately
thirty businesses" (Compl. ¶ 2; *see also id.* ¶¶ 17-19, 22); and
(2) "Applebee's also represents that the Applebee's Sweepstakes
includes, in addition to a $1,000 prize, multiple prizes that
are available to be won every day, when, on the contrary, there
is, in addition to the $1,000 prize, only one other type of
prize, which is a specific product [an iPod]; and only one such
product is awarded each day (again, to one participant in the
sweepstakes of approximately thirty businesses)" (*id.* ¶ 3; *see
also id.* ¶ 21).[6]  Plaintiff further alleges that the likelihood
that one of defendant's customers won a prize in the Sweepstakes
was "a fraction of the likelihood" that it would have been had
defendant's customers been competing for such prizes only
against other of defendant's customers, and not against the
customers of approximately thirty other businesses.  (*Id.* ¶¶ 20,
23.)

---

[6] In his complaint, plaintiff attempts to distinguish between the
"Applebee's Sweepstakes," which he defines as the sweepstakes that
defendant's customers are entered into once they complete the Survey on the
Website, and the sweepstakes of other businesses.  (*See* Compl. ¶ 1)  There
is, however, as alleged by the plaintiff, only one sweepstakes in which the
customers of several businesses, including defendant's customers, compete for
the same two daily prizes, $1,000 cash and an iPod (or an equivalent gift
certificate).  (*See id.* ¶ 21.)  The court has been referring and will
continue to refer to this collective sweepstakes as the defined term
"Sweepstakes."

**LEGAL STANDARD**

Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of a cause of action if plaintiff's complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard, however, does not require a showing of a "probability" of misconduct, "but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "'accept as true all allegations in the complaint and draw all reasonable inferences in favor of the

8

non-moving party.'" *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008); *see also Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotation marks and brackets omitted).

On a motion to dismiss, the court limits its consideration to: (1) the factual allegations in the complaint; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents that are "integral" to the complaint. *San Francisco Tech., Inc. v. Hi-Tech Pharmacal Co.*, No. 10-CV-3630, 2011 U.S. Dist. LEXIS 11020, at *4 (E.D.N.Y. Feb. 4, 2011); *see Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (noting that "even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint" (quoting *International Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))). "Indeed, courts may consider the full text of documents that are quoted in the

complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit." *Holmes v. Air Line Pilots Ass'n*, 745 F. Supp. 2d 176, 193 (E.D.N.Y. 2010) (internal quotation marks omitted).

As discussed above, in deciding this motion, the court will consider plaintiff's receipt, which was submitted by the plaintiff, and the screenshot of the Website, the Official Rules of the Sweepstakes, and the Complete Sweepstakes Rules, which were all submitted by the defendant, as these documents are either quoted in, incorporated in by reference, or integral to, the complaint, or alternatively, plaintiff knew about and relied on these documents in bringing suit. (*See* Def. Mem. at 9-10); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (finding a prospectus that was not attached to or incorporated by reference to a complaint to be integral to the complaint because "[t]he claims pleaded therein are based *only* on an alleged written misrepresentation appearing within the prospectus"); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 235-36 (S.D.N.Y. 2007) (finding "Ticketmaster's Terms of Use and the contents of the plaintiff's ticket [as] integral to the plaintiff's complaint" where plaintiff failed to attach them to, or incorporate them by reference in, the complaint). At oral argument, both parties explicitly agreed to the court's consideration of these documents in deciding the instant motion.

## DISCUSSION

In his complaint, plaintiff asserts three claims against the defendant:  (1) a violation of New York General Business Law § 349 for deceptive acts and practices; (2) a violation of New York General Business Law § 350 for false advertising; and (3) a claim for unjust enrichment.  In his opposition to the motion to dismiss, plaintiff withdrew his claim under New York General Business Law § 350 (Pl. Opp'n at 1 n.1), and the court so orders the dismissal of that claim.  The court will now address plaintiff's deceptive practices and unjust enrichment claims in turn.

## I.    The Deceptive Practices Claim

New York General Business Law § 349 ("Section 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and allows any person injured by a violation of the section to recover "actual damages or fifty dollars, whichever is greater," permitting the court to treble the damages up to $1,000.  N.Y. Gen. Bus. Law § 349(a),(h).  To successfully assert a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012).

11

Defendant represented at oral argument that, for the purposes of this motion, it is not contesting whether defendant's conduct at issue here constituted "consumer-oriented conduct." *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995) ("*Oswego*") (requiring that defendant's "acts or practices have a broader impact on consumers at large").

Without reaching the "consumer-oriented conduct" issue, the court finds that plaintiff fails to allege facts sufficient to satisfy the other two elements of Section 349: (1) that defendant's representations regarding the Sweepstakes were materially misleading and (2) that plaintiff suffered any legally cognizable actual injury. These two elements will be discussed in turn.

### A.    Materially Misleading

In order for defendant's conduct to be "materially misleading" under Section 349, the alleged representations must satisfy the objective test of being "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (N.Y. 1999) (internal quotation marks omitted); *accord Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). New York courts have dismissed claims for having failed to satisfy this element where a defendant fully disclosed the terms and

12

conditions of an alleged deceptive transaction that caused harm
to the plaintiff.  *See, e.g.*, *Shovak v. Long Island Commercial
Bank*, 858 N.Y.S.2d 660, 662-63 (N.Y. App. Div. 2d Dep't 2008)
(finding no materially misleading statement where yield spread
premium "was fully disclosed to the plaintiff"); *Lum v. New
Century Mortg. Corp.*, 800 N.Y.S.2d 408, 410 (N.Y. App. Div. 2d
Dep't 2005) (same); *Zuckerman v. BMG Direct Mktg., Inc.*, 737
N.Y.S.2d 14, 15 (N.Y. App. Div. 1st Dep't 2002) (holding that
shipping and handling fees were not deceptive where amounts were
disclosed)*; Sands v. Ticketmaster-New York*, 616 N.Y.S.2d 362,
363 (N.Y. App. Div. 1st Dep't 1994) (finding that allegedly
excessive ticket fees were not materially misleading where those
fees were fully disclosed prior to the sale of the tickets).

      Here, the gravamen of plaintiff's Section 349 claim is
that his receipt was materially misleading regarding the terms
and conditions of the Sweepstakes because it implied that (1)
every day one of defendant's customer's would win a prize, when
in fact other businesses' customers could win the daily prizes
instead of defendant's customers (Compl. ¶¶ 2, 16, 18-19); (2)
only defendant's customers were eligible to win daily prizes in
the Sweepstakes, when in fact customers of several other
businesses were eligible for and could win the daily prizes (*id.*
¶¶ 2, 17-18); and (3) there were "multiple" prizes awarded daily
in the Sweepstakes, when in fact there were only two daily

prizes - $1,000 cash and an iPod (*id.* ¶¶ 3, 21).  Whether the
receipt is considered by itself or together with the full
disclosures on the Website and the Official Rules, the receipt
was not materially misleading to a reasonable consumer acting
reasonably.

First, the statements on the receipt were not
misleading or false, and contrary to plaintiff's contention,
they did not contradict and were not inconsistent with the
statements on the Website and in the Official Rules.  (*See* Pl.
Opp'n at 2.)  Indeed, the statements on the receipt were
consistent with the terms and conditions of the Sweepstakes
insofar as there was "A WINNER EVERY DAY," plaintiff "COULD WIN
$1,000," and there were "Other great prizes also available
daily," namely iPods (or equivalent $200 Apple gift
certificates).[7]  In other words, the plaintiff received exactly
what was represented to him on the receipt by completing the

---

[7] Defendant conceded at oral argument that the statement "Other
great prizes also available daily" was arguably ambiguous.  This statement,
which follows the phrase "YOU COULD WIN $1,000," could imply that there were
at least two other prizes besides $1,000 available to be won on a daily
basis, and not just one other prize - an iPod *or* an equivalent $200 Apple
gift certificate.  On the other hand, "Other great prizes" could also
reasonably be interpreted to refer collectively to the numerous iPods (or
gift certificates) that could be won throughout the duration of the
Sweepstakes, or to the fact that a customer may receive an equivalent $200
Apple gift certificate instead of an iPod.  As discussed further below, when
this statement is considered together with the full disclosures on the
Website and the Official Rules, no reasonable consumer could believe that
there were prizes other than $1,000 and an iPod (or a gift certificate) that
could be won on a daily basis.  At best, the court agrees with the defendant
that the statement "Other great prizes also available daily" is ambiguous,
and this ambiguity cannot by itself satisfy the materiality element of
Section 349.

Survey – the chance to win $1,000 or "Other great prizes," either an iPod or a gift certificate.  Assuming as true plaintiff's assertion that the universe of all individuals eligible for the Sweepstakes was not disclosed on the receipt, the receipt is not materially misleading on its face.

At oral argument, plaintiff argued that the following facts taken together imply to a reasonable consumer that only defendant's customers were eligible to enter the Sweepstakes: (1) that defendant issued the receipt; (2) defendant's use of the word "our" on the receipt when stating "WE LOVE TO HEAR FROM OUR GUESTS" and inviting customers to "complete our GUEST EXPERIENCE SURVEY"; and (3) the instruction on the receipt directing customers to "[g]o online to: www.MyApplebeesVisit.com" rather than a third-party website, such as the website of the sponsor of the Sweepstakes, Empathica, Inc.  Nowhere on the receipt, however, does it state that only defendant's customers were eligible to win prizes by completing the Survey, and the fact that defendant issued the receipt and references its own customer survey does not necessarily imply the same.  In fact, the receipt explicitly stated "No purchase necessary" and that the only requirement is that the entrant be 18 years or older.  Thus the receipt specifically advised consumers that individuals who were *not* defendant's customers were also eligible to enter the

15

Sweepstakes and win the daily prizes.  Although the facts described by the plaintiff – particularly the fact that the receipt directs entrants to visit defendant's website to enter the Sweepstakes - *could* imply to a reasonable consumer that defendant is managing the Sweepstakes, such an implication, by itself, is insufficient to satisfy the materiality element of Section 349 after the full disclosures on the Website and the Official Rules are considered, as discussed below.

Second, the receipt clearly stated, in the same size text as all the other text on the receipt, that a Sweepstakes entrant should "See Website for rules/details" regarding the Sweepstakes.  Upon proceeding to the Website, an entrant would see the following in prominent white text next to the entry form for the Survey:  "To thank you for your thoughts, you'll have the opportunity to enter our daily drawing for $1,000.*  Plus, you could instantly win an iPod®[] at the end of this survey."  This language clearly indicated that there were only two prizes available to be won - $1,000 or an iPod - by completing the Survey and entering the Sweepstakes.  A reasonable consumer acting reasonably would therefore not be misled that there were multiple prizes in addition to $1,000 and an iPod that were available to be won by completing the Survey.

Third, displayed at the bottom of the Website in capitalized and underlined text is a hyperlink to the Official

16

Rules stating "CLICK HERE FOR OFFICAL RULES." As previously discussed, the Official Rules clearly stated that the Sweepstakes entries of defendant's customers were "pooled" together with the entries of other clients of the sponsor of the Sweepstakes, and also stated again that there were only two prizes - $1,000 or an iPod (or, alternatively, a $200 Apple gift certificate) – available to be won on a daily basis. Furthermore, the Complete Sweepstakes Rules stated that the "chances of winning the prize depend on the number of eligible entries received and the number of the Sponsor's client companies that are participating in the Sweepstakes." (Complete Sweepstakes Rules at 4.)

Because the terms and conditions of the Sweepstakes were fully disclosed in the Official Rules, which consumers were directed to review by both the receipts given to customers and the Website, a reasonable consumer that read the Official Rules as directed would not have been misled by the statements on the receipt, which, as discussed previously, were not themselves materially misleading or contrary to the Official Rules. In other words, the defendant here was not deceptive in failing to fully disclose the terms and conditions on its receipts when those receipts were simply the means for informing its customers of the Sweepstakes and directing them to "See Website for rules/details." Nor should the defendant be required to make

such a full disclosure on the receipt so long as the statements on the receipt were consistent with the Website and the Official Rules, which they were.

Plaintiff argued at oral argument that defendant should have required an entrant to review the Official Rules and accept its terms and conditions prior to entering the Sweepstakes (e.g., by clicking a box), but plaintiff failed to point to any legal obligation requiring such a burden on a Sweepstakes sponsor or entrant, particularly when it was not necessary because there were no materially misleading statements in either the initial disclosure (the receipt) or subsequent disclosures (the Website and the Official Rules).  Accordingly, plaintiff fails to allege facts sufficient to satisfy the "materially misleading" standard under Section 349.[8]

**B.    Actual Injury**

Although Section 349 "does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm." *Oswego*, 85 N.Y.2d at 26.  Here, plaintiff argues that he suffered actual harm because he "received less

---

[8] The same holding applies regardless of whether plaintiff reviewed the Official Rules.  The standard established by the New York Court of Appeals for determining whether conduct is materially misleading is that of a reasonable consumer, *Gaidon*, 94 N.Y.2d at 344, which means defendant's liability under Section 349 does not hinge on what this specific plaintiff did or did not review before entering the Sweepstakes.

than the represented value" by the defendant on the basis that
the likelihood of him winning a prize in the Sweepstakes was a
"'fraction of the likelihood'" that it would have been had he
been competing for the daily prizes only against defendant's
customers and not the customers of other businesses.  (Pl. Opp'n
at 5 (quoting Compl. ¶¶ 20-21).)  In other words, plaintiff
argues that the lower odds of winning a prize in the Sweepstakes
from competing against customers of other businesses - and not
just defendant's customers - constitutes actual harm.

　　　　Plaintiff's alleged injury is not legally cognizable
under Section 349 because he "sets forth deception as both act
and injury."  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 51,
56 (N.Y. 1999) (dismissing Section 349 claims where plaintiffs
sought "reimbursement of the purchase cost of cigarettes that
they claim they would not have bought, but for defendants'
fraudulent and deceptive practices," because this theory of harm
"contain[ed] no manifestation of either pecuniary or 'actual'
harm"); *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (N.Y. App.
Div. 3d Dep't 2007) (citing *Small* and dismissing Section 349
claim where plaintiff sought "a refund of the purchase price of
[a prescription drug] on the ground that she would not have
purchased the drug absent defendant's deceptive practices.").
Plaintiff claims that his injury is that he believed his odds of
winning a prize in the Sweepstakes was higher than his actual

odds.  Plaintiff, however, must allege actual or pecuniary harm that is separate and apart from the alleged deception itself.

Moreover, as stated above, plaintiff received exactly what was represented to him on the receipt and the Website by entering the Sweepstakes – the chance to win $1,000 or an iPod (or an equivalent gift certificate) – and no specific odds of winning were ever represented to him, whether on the receipt, the Website, or the Official Rules.  Indeed, the Complete Sweepstakes Rules explicitly stated that the "chances of winning the prize depend on the number of eligible entries received and the number of the Sponsor's client companies that are participating in the Sweepstakes."  (Complete Sweepstakes Rules at 4.)  Accordingly, because plaintiff fails to allege any legally cognizable *actual* harm – let alone any harm – from defendant's conduct, he cannot establish actual injury under Section 349.

As plaintiff fails to allege facts sufficient to satisfy either the materiality or actual injury requirements of a Section 349 claim, this claim must be dismissed.

## II. Unjust Enrichment

"An unjust enrichment claim is rooted in the 'equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'"  *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (N.Y. 2012).

According to the New York Court of Appeals, "unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.  Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 203 (2d Cir. 2005) ("When a plaintiff does not possess a private right of action under a particular statute, and does not allege any actionable wrongs independent of the requirements of the statute, a claim[] for . . . unjust enrichment [is] properly dismissed as an effort to circumvent the legislative preclusion of private lawsuits for violation of the statute." (internal quotation marks omitted)).

In order to adequately plead an unjust enrichment claim, the plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co.*, 19 N.Y.3d at 516.  Here, plaintiff alleges that his completion of the Survey benefited the defendant (Compl. ¶ 24), and that

the defendant "has been unjustly enriched by retaining, against equity and good conscience, the benefits that Plaintiff . . . ha[s] conferred upon Defendant by completing a survey in the course of participating in the [Sweepstakes]" (*id.* ¶ 27).

Such "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Indeed, plaintiff does not allege any facts whatsoever to establish how defendant was unjustly enriched or received benefits to which it was not entitled.  Additionally, as discussed previously, because plaintiff received exactly what was represented to him in exchange for completing the Survey, it does not appear that plaintiff could allege any basis for finding the defendant unjustly enriched.  Finally, to the extent plaintiff's unjust enrichment claim merely duplicates his claim under Section 349, it is dismissed for the same reasons.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted in its entirety, and plaintiff's deceptive practices and unjust enrichment claims are hereby dismissed. During the court's pre-motion conference on June 12, 2012, the court gave plaintiff an opportunity to amend the complaint in response to defendant's proposed motion to dismiss and he declined to do so.  In any event, because "'it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), the court will not grant plaintiff leave to amend the complaint.

As there are no other parties or claims remaining in this action[9], the Clerk of the Court is respectfully requested to enter judgment in this case in favor of the defendant and against the plaintiff and to close this case.

**SO ORDERED**

Dated:     September 26, 2012
           Brooklyn, New York

                                         /s/
                          _____
                          KIYO A. MATSUMOTO
                          United States District Judge
                          Eastern District of New York

---

[9] Plaintiff has not moved to certify this case as a class action, nor has he been designated a class representative. *See* Fed. R. Civ. P. 23(a)-(b); *Rittmaster v. PaineWebber Group (In re PaineWebber Ltd. P'ships Litig.)*, 147 F.3d 132, 138 (2d Cir. 1998) ("Absent certification by a court and identification of the class, the action is not properly a class action within the meaning of Rule 23(c)(1) and (c)(3)"). Accordingly, although plaintiff asserts claims on behalf of potential class members that are predicated on other States' consumer protection laws, his complaint must be dismissed. *Biscone v. JetBlue Airways Corp.*, 681 F. Supp. 2d 383, 386 (E.D.N.Y. 2010) ("As a general rule, until a class action is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, the claims of potential class members cannot be considered."); *see also Board of School Comm'rs v. Jacobs*, 420 U.S. 128, 128-30 (1975) (dismissing case where named plaintiffs' claims are moot and class was not properly certified); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 308 (S.D.N.Y. 2009) ("'[C]ourts in this circuit have repeatedly held that, in order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.'" (brackets omitted)).